UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT

United States Courts
Southern District of Texas
FILED

NOV 19 2007

Michael N. Milby, Clerk of Court

**Ahmad Jebril**
Inmate # 31943-039
Federal Correctional Institution
P O Box 4200
Three Rivers, TX 78071

v.

2:07cv436

**Dan Joslin** (Warden of Three Rivers Federal
Correctional Institution - Texas)
**Joseph Higgerson** (Captain of Three Rivers
Federal Correctional Institution - Texas)
**C. Eichenlaub** (Warden of Milan Federal
Correctional Institution in Michigan)
**Mukhtar Curtis** (Head Chaplain of Milan
Federal Correctional Institution in Michigan)
**Jodi Bradly** (Captain of Milan Federal Correctional
Institution in Milan, Michigan)

Case: 2:08-cv-10151
Judge: Battani, Marianne O
Referral MJ: Binder, Charles E
Filed: 01-11-2008 At 11:53 AM
TRANS HC JEBRIL V USA (RRH)

## Application For Federal Writ
## Of Habeas Corpus Under 28 U.S.C. § 2241

**PLACE OF CONFINEMENT:**
I'm currently an inmate at Three Rivers Federal Correctional
Institution in Three Rivers - Texas.

**NAME AND LOCATION OF COURT WHICH ENTERED CURRENT CONVICTION:**
I was convicted in the United States District Court for Eastern
District Court of Michigan.
Docket #: 05-CR-80175-DT-02 and 03-80810-01.

**BASIS FOR PETITION:**
Basis for this petition relates to prison transfer and prison
condition.

**NAME AND LOCATION OF THE INSTITUTION WHERE THE INCIDENTS AND/OR
EVENTS COMPLAINED OF OCCURED:**
Events originated in Milan. Michigan - FCI and continued on
to Three Rivers - FCI where I'm currently confined and where
the matter is still ongoing.

**COMPLAINTS:**
While serving time in Milan FCI I was taken to the Special Housing
Unit(SHU) for eight months without any due process and then
ordered transferred to Texas, Three Rivers - FCI a much higher
security prison outside my region and far from family.  In both
Milan and Three Rivers staff targetted me, bullied me, harassed me
and discriminated agaisnt me.

**GRIEVANCE PROCEDURE:**
On 6/4/07 I filed a request for an informal attempt of an adminis-
trative remedy.

PAGE 1

After Counselor and unit manager returned it on 6/5/07 signed
"unable to informally resolve", I then filed a request  for
administrative remedy to the Warden (BP-9) on 6/6/07.
On 6/20/07 Warden Eichenlaub indicated I'm no longer appropriate
to be in Milan FCI because he alleges I attempted to organize
private religious meetings.

On 6/27/07 I filed an appeal to the regional director (BP-10).
I stated more facts and circumstances regarding my transfer and
treatment of staff.

On 7/12/07 Regional Director Nally responded "we have reviewed your
appeal and determined the Warden's response dated 6/20/07 thoroughly
addresses your concerns.

On 8/3/07 I filed an administrative remedy appeal to the central
office of the Federal Bureau of Prisons in Washington, D.C.

After I did not receive a response I sent in several letters
requesting a response because the response due date of 9/22/07
had passed.

On Oct. 9, 2007 administrator Watts from national inmate appeals
responded saying "As noted by the regional Director, based on
SIS investigation staff determined you were no longer appropriate
for FCI Milan and required greater security".
See exhibit #1.

**SPECIFICS OF CLAIM(grounds, and supporting facts):**
On 12/11/06 in Milan FCI I was escorted to the special housing unit
(SHU) along with my father Musa Jebril #31942-039.
We had absolutely no idea why we were taken to the SHU and all the
staff refused to inform me why I was taken to the hole other than a
notice they gave me stating that I'm under SIS investigation.

I assumed it was related to conversations and issues I discussed
with head chaplain of Milan (Mukhtar Curtis) who was promoting
the most radical brand of Islam and I have solid proof of that.

I have in a safe place a book he promoted called (MILESTONES by
Sayyid QUTUB) considered the spiritual manifesto of the terrorists
and the spark that started the radical and terrorist groups of
our time.  He was personally handing this book out to inmates to
study it and read it.  It is stamped with US BOP Milan Chapel's
property.  I HAVE THIS SOLID EVIDENCE IN A SAFE PLACE.  This was
one of many issues I was against and spoke to him about.
Exhibit #2 has much more details of most of what transpired between
me and Chaplain Mukhtar Curtis.
Knowing that and how evil Mr. Curtis is in how he boasters how his
memo's destroy anyone and in fact boasters that it was his memos
that destoryed father Howard and sister Pat his co-workers for him
to become the head chaplain.  Knowing all that about him I assumed it
was his memo that put us in the SHU resulting in an SIS investigation.

I pleaded with the staff in the SHU to speak to someone about
Curtis before he hides evidence of radical material throughout
the prison.

On 12/14/06 I was finally able to speak to SIS - Agent (WEBBER).
The meeting lasted less than 5 minutes and he had no interest in
what I had to say nor did he officially inform me why I was in the
hole.
After listening to what I informed him about Curtis he only asked
one question regarding 5 books I had in my property that he thought
were radical and accroding to him I should not of had in Milan.
Please see Exhibit #2 for the titles and authors of what Webber
assumed were radical books.

On 1/9/07 I arranged through my attorney to meet with my agent and
Assistant US attorney Ms. Oberg.  I informed them of what I know
of Curtis's activities and this was based on my persistent request.
In fact the first words Ms. Oberg said was "we are here at your
invitation what do you want to tell us".

I spent 8 months in Milan's SHU where I was mistreated, bullied,
harassed and taunted by staff there who had been informed that
we are terrorists.

The Captain of Milan FCI Jodi Bradly passed my cell telling a
SHU officer "You should read the last report we got on Jebril's
the terrorists.  When he used to see ........ shout Akbar..".  The
(....) are words I could not make out as she was speaking.

There were times I was deprived of meals and when I asked for it
I was informed by staff that "we don't feed terrorists".

I was not given access to my property as others were and most of my
property was missing.  I have filed a #1055 tort claim of missing
property.

There are countless issues like that.

After 8 months in the SHU I was suddenly informed that I will be
transferred to another prison.  I was not informed why or where
until I stepped foot in Three Rivers, TX - FCI a medium high prison
over 35 hours away from my region.

My custody level is 4 points which means I'm at a camp level because
anything under 11 points is camp level.
This transfer to a higher security prison was not all they violated
me in but they moved me from my region where I was 20 minutes from
my house to a prison in TX 35 hours from my house.

This transfer to a higher security prison and 35 hours outside my
region is a clear violation of my due process rights because a
management variable was placed on my custody level without a
disciplinary hearing or any type of notice let alone any elementary
procedural due process and this transfer was WITHOUT just cause.

This transfer constitues cruel and unusual punishment and serves no
legitimate regulatory purpose.  It is a sanction they imposed on me
that constitutes a SEVERE punishment and the transfer along with
labeling me a "terrorist" as staff warn inmates about me and mistreat
me both in Milan FCI and now here in Three Rivers FCI deprive me
of rights I'm entitled to even in my confinement; deprivation of which

<u>of which serves no purpose other than to make my imprisonment more</u>
<u>burdensome than law allows and curtails my liberty to greater extent</u>
<u>than law permits.</u>

I'm at a medium high prison with inmates of a much higher custody level
than me in fact I'm the lowest custody level inmate in the entire prison
which is very dangerous because they are all affiliated with groups
and gangs and I'm not.  They have purposely sought to place me in
danger with higher security inmates.

As a result of this transfer my ill mother who never missed a single
visit when I was in Milan - FCI is no longer able to visit me due to
her health condition as verified in my PSI and due to our financial
condition where she could not afford to visit me 35 hours away finan-
cially even if her health permitted her.

They could have placed me in a Medium security prison in my region
where my mother could visit me but they only sought to inflict harm
and punishment that constitues no legitimate regulatory purpose
in effective  management of correctional insitutions in violations
of my rights.

As a result of this transfer I was mistreated in my stay in Milan- SHU
and here in Three Rivers TX - FCI staff continue to mistreat me.
They bully me, target me, discriminate agaisnt me and harass me
in the worst way one can imagine.
Exhibit # 3 is a letter I wrote to Three Rivers FCI warden regarding
mistreatment by his staff only two weeks after I arrived here.
The letter served no purpose but to make things worse after it.

Matters have gotten so bad by staff targetting me that I no longer
step foot in the chow hall so they stepped up harassment by the
metal detector/shack area where I must pass.

I was informed that prior to my arrival on Three Rivers compound a
memo was sent to every single staff warning about me that resulted
in this type of treatment against me.  I would like the court to order
discovery of that memo.

Staff in Three Rivers TX have been warning other inmates not to talk to
me because I'm bad news and/or a terrorist.

I ask that this unjust transfer be heard before your honorable court
and I be permitted to a hearing to show that I belong in a camp in
my region and also be given time off due to the mistreatment of
staff in both Milan and Three Rivers.

I also ask that discovery of all documentation be presented to the
court and myself prior to any hearing that was used to order my
transfer, label and mistreat me.

I initiated informal and formal remedies in Milan and continued them
during my stay in Three Rivers - TX where I received the final
response  pertaining to my transfer and discrimination in Three Rivers
from the Federal Bureau of Prisons in Washington, D.C. on 10/9/07.
Exhibit # 1 are copies that I exhausted all BOP remedies regarding
this matter.

PAGE 4

I also ask that no retaliatory tactics be used agaisnt me for filing
this petition by Three Rivers - FCI.
It is widely known throughout the system that when many remedies or
petitions as this are filed the prison transfers the inmate or
places them on what's called "diesel therapy" transferring them from
one place to another to avoid responding to this or attempting to
render it moot.

I ask that if they do any of that, that I proceed with my petition
to recieve justice unless they place me in a camp prison in my region and
stop the discriminatory treatment and the living hell they are
putting me through.


I declare under penalty of perjury that the foregoing is true
and correct.

11/13/07
Date

Signature of Petitioner

PAGE 5

```
  MILSV  606.00 *      MALE CUSTODY CLASSIFICATION FORM      *    06-25-2007
  PAGE 001 OF 001                                                 09:17:12
                          (A) IDENTIFYING DATA
  REG NO..: 31943-039            FORM DATE: 12-31-2006            ORG: MIL
  NAME....: JEBRIL, AHMAD MUSA
                                      MGTV: NONE
  PUB SFTY: NONE                      MVED:
                          (B) BASE SCORING
  DETAINER: (0) NONE              SEVERITY.......: (3) MODERATE
  MOS REL.: 35                    CRIM HIST SCORE: (02) 2 POINTS
  ESCAPES.: (0) NONE              VIOLENCE.......: (0) NONE
  VOL SURR: (0) N/A               AGE CATEGORY...: (4) 25 THROUGH 35
  EDUC LEV: (0) VERFD HS DEGREE/GED  DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                          (C) CUSTODY SCORING
  TIME SERVED.....: (3) 0-25%     PROG PARTICIPAT: (0) POOR
  LIVING SKILLS...: (1) AVERAGE   TYPE DISCIP RPT: (5) NONE
  FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (4) GOOD

              --- LEVEL AND CUSTODY SUMMARY ---
  BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
  +9   +16    -1       +8        MINIMUM      N/A              IN     DECREASE

  G5149        INMATE/DESIG FACL LEVEL MISMATCHED, HAVE DSCC ADD A MGTV
  G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```

*(handwritten annotations)* See this

Custody level on 6/25/07

(8 points went down because my age turned 36 and time served) is less so I got 4 points.

Ahmad Jebril #31943-039
Federal Correctional Institution -
P. O. Box 4200
Three Rivers, TX 78071

legal Mail

United States Courts
Southern District of Texas
FILED

NOV 19 2007

Michael N. Milby, Clerk of Court

CLERK OF THE COURT
SOUTHERN DISTRICT COURT
1133 N. Shoreline Dr.
Corpus Christi, TX 78401

Clerk of The Court
Southern District Court
1133 N. Shoreline Dr.
Corpus Christi, TX 78401

United States Courts
Southern District of Texas
FILED

NOV 19 2007

Michael N. Milby, Clerk of Court

Dear Court Clerk:

Enclosed please find the following:
1) 3 copies of a §2241 petition "Habeas Corpus" please return
a copy to me stamped (filed) in the enclosed self-addressed stamped
envelope.

2) Also enclosed are 4 exhibits:
Exhibit #1: Copies of informal and formal remedies as proof that
            I exhausted all Federal BOP remedies.
Exhibit #2: A detailed letter documenting what transpired between
            me and Chaplain Mukhtar Curtis of Milan FCI that sparked
            this transfer and mistreatment I undergo.
Exhibit #3: A letter to Warden Joslin of Three Rivers - TX where I'm
            currently serving time regarding mistreatment by his
            staff only 2 weeks after my arrival.  The letter solved
            nothing but only made matters worse.
Exhibit #4: Memorandum in support of petition.

As to the $5 fee.  Since I'm an inmate and unable to send it my wife
has sent it on 11/13/07 and called you numerous times to make sure
that she is sending the $5 fee while I will send the peition from
prison in seperate envelopes from 2 seperate locations.  She was
informed it was ok to do so and to make a note of it in her letter
to you and in my letter to you.

I appreciate your help in this matter.

                              Sincerely,

                              Ahmad Jebril
                              Inmate # 31943-039
                              Federal Correctional Institution
                              P O Box 4200
                              Three Rivers, TX 78071

*Exhibit #1*

MIL-1330 13c
12-03-04
PAGE 7

Date Due to Inmate: _6/1/07_
Attachment B

*rec'd from I/m 6/5/07*

### FCI/FDC Milan, Michigan
### Request For Administrative Remedy Attempt At Informal Resolution

Inmate's Name: _Ahmad Jebal_

Registration Number: _31943-039_

Unit: _F1_

### TO BE COMPLETED BY INMATE:

1. Briefly state the complaint - include all details and facts to support the complaint and request: I was placed in the SHU since 12/1/06 then informed m due to be transfered to another prison and was not informed the reason why I'm being transfered when my family are so man away & mother is very i

2. What action(s) do you wish to be taken to correct the situation: I know my transfer is discrim us a practicing muslim even though I was born here. I ask that I be transfered to a custody level 3 at p since my ~~pena~~ Camp otherwise I demand an investigation into the discrimination of my trans I ask to stay in m

3. Indicate below your efforts to resolve the matter and who you contacted to settle the problem: (Be specific but brief and include names of staff contacted to attempt resolution.) I've spoken to Ms. Wilson who is among those who discrimi then to Ms Moody who said she'll look into it (Bless her soul). I wanted to make this writing because I plan to exaust my BP's and then my attorney is planning a lawsuit if its not solved for

Inmate Signature: _Ahmad J_      Date: _6/4/07_      all the ~~lab~~ discriminat I went through in Milan because I'm muslim.

### TO BE COMPLETED BY UNIT STAFF:

4. Attach any pertinent documentation related to the inmate's complaint to the back of this form.

| _____ | _6-5-07_ | _____ | _6/5/07_ |
| Correctional Counselor | Date | Unit Manager | Date |

Date Informally Resolved: _N/A_

Date BP-229 Issued: _N/A_

unable to informally resolve

If complaint is not informally resolved, original BP-229 and this form are to be forwarded to the DCA/DCA's Secretary.

6/5/07

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

Given to mail on 6 6 07 @ 9 am

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Jebril Ahman          31943-039     F1(D-8W)  FCT

LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A— INMATE REQUEST**   RE: Transfer To Camp Request

I have been discriminated at in Milan-FCI because I'm a harder
practicing muslim. (I ask that A hold be placed on my transfer till this resolve)
On 11/1/06 I was placed in the SHU then left 6 months later
informed I'll be transferred and not informed why!!!
I have been undergoing a series of discrimination tactics,
this transfer to be one: 4 custody level
my classification points are at camp (8 points) If I'm due to
transfer I demand to go to my level a camp which I have
No problem with. Otherwise I want to stay in Milan-FCI
near my family ending this discrimination of transferring me
Sending me to a camp resolves the matter where Milan FCI is happy to get
rid of me and I'll be where I belong.

6/6/07   (This transfer if not to a camp     Ahmad Jebril
DATE     is religious profiling)             SIGNATURE OF REQUESTER

**Part B— RESPONSE**

6/7/07
DATE                              WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE          CASE NUMBER: 461720-F2

                                        CASE NUMBER:

**Part C— RECEIPT**
Return to:
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT:

DATE                              RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                                                        BP-229(13)
                                                              APRIL 1982

**BP-229 RES~~~**                                    **CASE NUMBER: 454320-F2**

Your request for ~~~ .strative Remedy (BP-229), dated June 6, 2007, and received in this office on June 1., 2007, has been reviewed.  Specifically, you claim you have been discriminated against and you request a transfer to a camp facility or remain at FCI Milan, Michigan.

A review of the issue(s) raised in your BP-229 has been conducted.   You have been referred for a transfer as a result of an SIS investigation for attempting to organize private religious meetings at FCI Milan.  It has been determined you are no longer appropriate for this institution and require greater security than is available at FCI Milan. You have not provided any evidence that you have been discriminated against because of your religious preference.

Accordingly, your Request for Administrative Remedy is denied.  In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.


_____          _____
C. Eichenlaub, Warden                           Date
                                                              6/20/07

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Jebel, Abman    31943-039    F1    FCI-Milan
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A - REASON FOR APPEAL

The stated reason ordering my transfer (attempting to organize prior Religious meetings) is discriminatory and retaliation and islamophobia lie! I put in 3 official cop-outs specifically asking for monitored multi-faith/interfaith classes to the Muslim Chaplain Imam Mukhtar Curtis. The Chaplain Imam Curtis is a radical jihadist and sympathizer of Al-Qaeda and Hizbullah who I had a fall-out with on Sept 22 06 over him spreading Al-Qaeda radical material and ideology that is 100% Proven fact. He then put in a retaliatory memo fearing for his job and asking for my transfer. I asked for classes in an official & Proper way for interfaith study.

＿6/27/07＿　　　(Continued on attachment)
　DATE

SIGNATURE OF REQUESTER

Part B - RESPONSE

SEE ATTACHED RESPONSE

JUL 16 2007
　DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

SECOND COPY: RETURN TO INMATE    CASE NUMBER: 454320 R1

Part C - RECEIPT

CASE NUMBER: ＿＿＿＿＿＿

Return to: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: ＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

＿＿＿＿＿＿＿＿＿＿＿
　DATE    SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN    BP-230(13)
JUNE 2002

of interfaith meetings are against radical muslim teachings like Iman wrote. This enraged him. on 12/10/06 he summoned me to his office with all 3 copout on his desk and he was so furious, age why. I as a muslim would worship study with Jew's Christans. Had I wanted to do a private class(es) I would not place 3 copout and not facl a response. All classes are another

If that is against Milan policy all they had to do is reject it and tell me not to get involved in religious matters and I would accept. Not place me under investigation and transfer me. Thats religious profiling.

I have v8 points (computer tall) and if indeed there must be a transfer it should be to a camp otherwise it should stay in Milan near my family.

I was never questioned pertaining to anything against me. I feel I should be able to defend myself. The only meeting after my SIS investigation was on 12/14/06 based on my request I gave info on Imam Curtis and was not questioned the meeting lasted 5 minutes. on 1/8/07 I requested to meet with FBI and also gave them info on Imam Curtis, and was not questioned as well.

I only found out why I was being transfered on 6/25/07 when enclosed BP 229 (13) was returned to me; I also was never informed why I was under investigation until 5/30/07

This has been an issue of many I faced as a muslim in Milan which I plan to persue in a federal civil court if I dont get justice

.Thank You

6/27/07

Enclose BP 229 (13) & prayer & letter to child Homeland Securi

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

---

**Admin Remedy Number:   454320-R1**

---

This is in response to your Regional Administrative Remedy Appeal dated June 27, 2007, in which you claim your transfer to another facility is discriminatory and retaliatory in nature due to your Muslim faith. You allege religious profiling due to your submission of three Inmate Request to Staff Member forms to the Chaplain requesting to attend monitored Interfaith religious studies with Jewish and Christian inmates. For relief, you request a transfer to a camp or continued confinement at FCI Milan, a facility close to your family in Michigan.

We have reviewed your appeal and determined the Warden's response dated June 20, 2007, thoroughly addresses your concerns. As indicated in that response, you are pending a transfer as a result of an SIS investigation for attempting to organize private religious meetings at FCI Milan. You have provided insufficient evidence to support your claim that staff have acted in a discriminatory manner or acted outside the scope of national policy.

Based on the above, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534. Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_2/12/07_
Date

Michael K. Nalley, Regional Director

**Central Office Administrative Remedy Appeal**

GIVEN
ON 8/3/07

point pen. If attachments are needed, submit four copies. One copy each of the completed BP–DIR–9 and BP–DIR–10, including any attach-
submitted with this appeal.

| Jebril, Ahmad | 31943-039 | F1 | Milan - FCI |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

Regional did not do anything!
I plead that you re-investigate what SIS investigated. SIS
gent webber, the warden, captain and others ordered me transferred
ased on lies as a cover up because I found out about a terrorist
haplain they employ. I held nor attempted to hold private religious
lasses; I only wrote 3 formal cop-outs asking for monitored interfaith meetings.
that's wrong with asking that? Where is that a violation of BOP rules.
have 6 custody points & they are sending me to a medium!!! This is outrageous
did nothing wrong. Please review what I wrote in the BP-DIR 10 as well
re attached letter to chief of Homeland Security to get the general idea.
low CAN YOU PUT ME WITH 6 POINTS in a medium prison by a managem
ariable for something I did not do.
ease help me get justice otherwise this matter will be in the media ad
a federal civil court. It's outrageous.

| 8/3/07 | |
|---|---|
| DATE | SIGNATURE OF REQUESTER |

**Part B—RESPONSE**

RECEIVED

AUG 1 8 2007

Administrative Remedy Section
Federal Bureau of Prisons

| | GENERAL COUNSEL |
|---|---|
| DATE | |
| ORIGINAL: RETURN TO INMATE | CASE NUMBER: 454320-A |

**Part C—RECEIPT**

CASE NUMBER:

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: _____

| DATE | | SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL | BP–231(13) |
|---|---|---|---|
| | | | APRIL 1982 |

Administrative Remedy No. 454320-A1
Part B - Response

This is in response to your Central Office Administrative Remedy
Appeal in which you claim you were discriminated against and
request to be transferred to a camp or allowed to remain at FCI
Milan.

Our review reveals the Warden and Regional Director adequately
responded to the issues you raised in your appeal.  The issue of
transfers is left to the discretion of the Warden and staff at
the Designation and Sentence Computation Center per Program
Statement 5100.08, <u>Security Designation and Custody
Classification Manual</u>.  The Bureau of Prisons attempts to
designate inmates to facilities as close to their homes as
possible commensurate with their security needs.  Several factors
are considered in redesignations (transfers) from one Bureau
institution to another include, but not limited to release
residence, population pressures, security level, program needs,
and public safety.  In addition, the inmate's institutional
adjustment and program performance are also carefully reviewed
when redesignation is considered.

As noted by the Regional Director, based on SIS Investigation,
staff determined you were no longer appropriate for FCI Milan and
required greater security.  Staff at the Designation and Sentence
Computation Center reviewed your case and approved your transfer
to FCI Three Rivers.  Accordingly, we find you are appropriately
designated and therefore concur with the responses provided.  We
do not find any evidence to support your allegations of
discrimination.  This response is provided for informational
purposes only.

October 9, 2007
_____
Date

_____
Harrell Watts, Administrator
National Inmate Appeals

*Exhibit #2*

This brief is a summary of what occurred in Milan federal prison between myself and the official chaplain there (Imam Mukhtar Curtis).

I'm currently an inmate at Three Rivers - TX Federal Correctional Institute after being transferred from Milan FCI.

My father inmate (Musa Jebril #31942-039) and myself have been convicted on fraud charges. I have an additional jury tampering charges.

This letter relates to radicalization of inmates in Milan Prison by the official prison chaplain named Mukhtar Curtis.

As to my background I'm a Muslim from parents born in Jordan who have been in the U.S.A. in Dearborn, Michigan for over 40 years. I studied and graduated from the Islamic University in Medina - Saudi Arabia. I then attended and graduated from Law School with an L.L.M. (masters of Law) from Wayne State University. I was born in Dearborn, Michigan.

The Islamic University I attended is a (Wahabi/Salafi) school and I have an extensive background in studying under all major Salafi/Waha reference scholars of this age. There is not a single referance of Wahabi school that I have not read or studied.

Upon entering prison I have come to realize that radical/extreme Islam is more dangerous to Islam than it is to anyone else. My ideological transformation is a long story and not the result of prison itself but circumstances in meeting people, reading, and careful thinking.

In March of 2006 I was admitted to Milan's prison. The moment I entered the compund I was greeted by Muslims and asked to be their teacher and preacher.

The Chaplain (Imam Curtis) insisted I do the teachings which were two classes and the Friday sermon based on the inmates request and his desire. The meetings were all conducted in the monitored rooms and were recorded by the chaplain.

During my stay there and teachings there I discovered that Imam Curtis is promoting the most radical brand of Islam.

On or about Sept. 22, 2006 I had a heated discussion with Imam Curtis and told him that I will withdraw to myself and will no longer be part of the Muslim community in Milan.

Between March of 2006 and Sept. of 2006 it became apparent how radical Imam Curtis is and that's based on the following information:

1) Prior to March 2006 I was in the detention center of Milan and I found several video tapes on titled (Beware of the American Holidays) by a Shiekh called Abdul Hakeem Quick with images on the cover bashing a Christmas tree, pumkins....etc.

I took the tape to my cell and when Imam Curtis's co-chaplain (Sister Pat) came in I handed it to her and told her this is inappropriate to be here.  She looked at it and agreed.  She must of told Chaplain Curtis who came in raging and fuming telling me not to ever talk to the infidel Sister Pat because she wants his job according to him.  I did not understand his rage or personality.

At a later point I told him of other videos by Imam Siraj Wahhaj who promoted hatred and even violence in at least two of them against Jews, yet Imam Curtis did not do anything.  In fact he approved of them and their topics.

    2) My best freind in the detention center was a Jew by the name of (Elijah), we grew to be strong freinds and our families in the outside world met and exchanged gifts.  Imam Curtis always deterred me from befreinding Jews.

    3) After I went to the prison and became a teacher around March of 2006 it became apparent that Imam Curtis purposely promotes radical Islam and those videos and his comments among other things are not random mistakes but purposely placed there.

In the audio library of Milan's FCI is a series of audio for anyone to check out called (THE LIFE OF ABU BAKER) by ANWAR AWLAKI!!!!
    a)The tapes were brought in while I was there around June of 2006 after it was apparent who AWLAKI is and Imam Curtis knew exactly who he was.

    b) ANWAR AWLAKI as you know is wanted in connection with 9/11!  One of the suicide murderers of 9/11 always attended his classes  That should be enough not to promote his tapes especially in prison regardless of what he says in those particular ones.

    c) What's more outrageous is that the tapes talk about Abu Baker the #1 man after the Prophet Muhammed! But in them is radical jihadic stories and talk that make a Muslim influenced by them a ticking time bomb eager to become a suicide murderer, or a militant to fight Jews and Christians.

    4) In Imam Curtis's offices and right behind his back on the shelf is an Arabic encyclopedia like series called (AL-FATAWA) by the famous Salafi scholar from 7 centuries ago called (IBN TAIMIEH).
He has several copies of the 28 volume set throughout the prison.
Ibn Taimieh is considered the father of Salafisum who is the author of this 28 volume set.

The rulings in them are what Ibn Ladin and Zawahri as well as most terrorists use to back their terrorisum in the name of Islam, because he justifies killing innocent people even Muslims let alone non-Muslims and for some reason Ibn Taimieh has credibility among the ignorant masses of the Muslims.
There is abount 3 volumes on Jihad and many volumes dedicated to how Muslims must seperate themselves from others.....etc.

This is right behind his back!! The offical BOP chaplain!!

    5) Behind his back as well until 12/11/06 when I was placed in the

-2-

SHU/Hole was also numerous blue copies of a book called (MILESTONES) by (SAYYID QUTUB).

a) This book is considered by all experts on radical Islam the seed that sparked AL-QAEDA and terrorist groups of our time. In fact its the most dangerous book on radiclizing Muslims.

It's the terrorist spiritual manifesto!  Stamped US BOP MILAN FCI!!! PROPERTY!!
What could Ibn Ladin wish for more that a US head Chaplain spreading the MILESTONES paid for by USA funds!!

b) When I initiated teaching (the Sat. classes) I taught physical purification for prayers as well as prayer, the initial years of the Prophet Muhammads life and the attributes  of Allah. Imam Curtis asked me to teach Milestones for Qutub instead of what I teach and I refused.

Having those books are not random mistakes he is promoting the most radical brand of Islam there ⟶ PURPOSELY!

6) An Inamte On Sept 2006 named Anthony Robinson, inmate # 49759-004,  He is a white inamte who is a recent convert to Islam and goes by the name (Muqsit).  Anthony Robinson approached me with the book (MILESTONES) by Qutub and was on about p. 23 and told me I've been reading this book what do you think about it?

I read that book back in 1989 and was suprised to see it with him in prison!!  I asked how did you get it?
He said I asked Imam Curtis to give me something very good to study and he gave me this.  I skimmed through the book and found it stampe US BOP Chaplain property in diffenrt pages of the book.

I took the book from inmate Robinson and told him not to read it. When he kept asking for it I again brushed him off and did not retur it to him but gave him some moderate Islamic Newspapers instead!

I KNOW WHERE THE BOOK IS TO THIS DAY IN MILAN AND IT"S STORED FOR EVIDENCE!! If you need it let me know!!!

In Sept 2006 it was Ramadan and after breaking our fast I asked Iman Curtis to sit on the side with me and I asked  him why are you passing out books like Milestones and even encouraging inamtes to read them while you know they inspire people to join Al-Qaeda when they leave prison.

He said there is nothing wrong with that book and I read it!

After this heated conversation I told him your Wahabi/Salafi  books are dangerous and there is one more Friday to Ramadan I'll give that last one and finish the nightly prayers and after that I don't want to be part of your radical Muslim community.

He begged me to stay claiming he's going out of town and needs me to lead Friday prayers for two more weeks but I refused.

7) He runs the prison by 4-5 radical inmates who he informes everything and are hard line gangsters who get incentives and even lie or do anything he tells them!

-3-

8) Between March 2006 and Sept 2006 there was also several
conversations where I told him his close intimate Shia inamtes are
promoting Hizbuallah during the 34 day war and some went on to collec
donations for them through outside relatives.

Like Awlaki's tapes, Milestones and others he thought it was good and
nothing wrong with it.

In fact his close friend inmate Muhammed Khalief who got into numerou
problems with other inmates and ran to Imam Curtis to defend him.
Rather than take the matter to the C.O.'s, lieutentants or captain
to solve the matter the right way.  Imam Curtis sent one of his
shura member inmates who he runs the prison with to fight the other
inmate and put him in check defending Khalief.  Once it was regarding
an inmate who approached Khalief for sex and another time one who
was extorting him.

Inmate Nabhan Isa who is wealthy was talking to Khalief who had
convinced him to donate money to Hizbullah through Khalief's
brother (SALEEM Khalief).  Inmate Isa was to send his wife on one of
her visits to Milan, MI from Chicago to meet Saleem Khalief and
give him $3000 to go to Hizbuallah.  Isa a Sunni Palestinean was
sympathetic to Hizbuallah because of the ongoing 34 day war which
Khalief convinced the compund of Muslims are rightous warriors and
the angels have been spotted fighting with them according to Jewish
papers.

I was against Hizbuallah for many reasons and stood firm against them
When Isa approached me to tell me of the money he plans to send
through the Khalief's I tried and pleaded he not do that!  I then
informed Imam Curtis in front of Isa to help me sway Isa from doing
this!!  However, Imam Curtis encouraged Isa and praised Mohammed
Khalief and Hizbuallah.

I do not know what happended after that  because Imam Curtis had told
them to keep it confidential and secretive of me.

9) There were other booklets like the (TEN NEGATORS of Islam)
by no other than the founder of Wahabisum (Muhammad Bin Abdelwahab
More amazing is that the USA asked the Saudi officials to take the
negators out of their school curriculum because it's one of the
things that breeds radicals and terrorists.  YET here in Milan Michig
FCI it's bought and paid for by US funds and passed out inside a
USA prison by a chaplain paid for by USA funds.

There was similar talk that I had with Curtis regarding statements
like (USA HATES ISLAM) (USA IS PUTTING THE BEST OF THE BEST IN
PRISONS) (USA PUT THE BEST SCHOLAR AND MY FREIND -according to Curti
Ali Tamimi in prison) (USA IS A CRUSADER).....etc and other similar
statements.

10) After Sept of 2006 I shun the Muslims for reasons here
and due to his obsession in being the leader enforcing his ideas.

From Sept 2006 to Dec. 11, 2006 I wrote Curtis three official cop-ou
asking for monitored class roms independant of his influence
except for his monitoring!  I specifically have in them I want them
to be INTERFAITH for Christians and Jews to bridge the gaps and seek
brotherhood among all faiths and sects.

On 12/10/06 after getting my 3rd cop-out he had his gang of thugs
who he calls his (shura) or (counsel) escort me forcefully from the
yard where I was speaking to inmate (Thomas Valerie) to his
office where he was outraged at a few things mainly how I wrote three
cop-outs he had on his desk and how dare I ask for interfaith with
Jews and Christians splitting the Sunni community in prison.  He
was fuming in anger telling me I need to declare myself non-Sunni
Muslim for asking for interfaith gatherings with non-Muslims
because according to him that is against Islam!

Being against interfaith meetings to help understand other faiths and
bridging the gaps is against radical/extremist Muslims beleif.

**Why not ask Imam Curtis to provide you with the three cop-outs that
were the issue of our heated conversation the day before he sent me
to the SHU/Hole!?!**
I ask for interfaith meetings yet get branded a radical, get sent to
the HOLE and now taken to a higher security prison 35 hours away
from my family!
Yet Imam Curtis who opposes interfaith meetings and was upset at me
for asking for such meetings is deemed a moderate working for  the
US BOP!?!
The cop-outs I sent were before any investigation occured and they
specify multi-faith meetings.  That is my true and sincere beleif.

     11) On 12/11/06 my father who had absolutely no activities on
the compund and I were placed in the (hole/Special housing unit/
solitary) because Imam Curtis did a pre-emptive strike and wrote
a memo of nothing but lies to cover up for himself!

**What is clearly outrageous and shows the SIS and anyone else who
investigated this is biased and trying to cover up that they have
an officail US BOP promoting AL-Qaeda and radical Islam is that
from March of 2006 TO Sept. of 2006 when I was teaching in monitered
rooms I was never investigated because he monitered them and
told me he records my classes and speeches.**

**Yet from Spet 2006 to Dec. 10, 2006 when I did absolutely no teaching
but ask for independant monitored interfaith classes (independant
of Chaplain Curtis's radical influence) I was placed in the Hole
under investigation.**

**THE HOLE IS THE PRICE I PAY FOR STANDING UP AGAISNT A RADICAL!**

     What also needs to be noted is that from March of 2006 to Dec.
of 2006 I sent numerous letters to my attorney of what Imam Curtis
was doing and asking him to inform my prosecutor or the government
to let me wear a wire or a recording device to hear what Chaplain
Curtis promotes.

On one occasion my attorney informed me the government is not intere
to hear from me.

Also, on 2/28/07 were before Judge Gerald Rosen and my attorney Rich
Lustig stated on record that he was getting mail from me that is
specified as "privilged - attorney client" yet it's open with no
letters in them!!!

I assume that Imam Curtis had his freinds in the mailroom track my letters and that's why he did the pre-emptive strike to attempt to declare my father and I radicals to cover up for himself making it appear as though he is moderate and to cover himself of what I was writting to my attorney about his activities.

In a letter in June of 2006 I asked my attorney while I was still in apparent good terms with Curtis to get the government to let me wear a wire or allow me a recorder to hear what he says about Zarqawi, Ibn Ladin, Hizbuallah group and others of praise among other things and what he really says about the USA. At that point I really did not want nothing in return for this from the government.

Imam Curtis is obsessed with everything I do like a child. A week before he put us in the hole I left the prison on a writ to take a plea on my 2nd jury tampering charge. After getting back everyone told me Imam Curtis was like a nut running around trying to figure out where you went asking both staff and inmates. He confided in inmate Yousif that he thinks I went before a grand jury to testify against him because he's a real Muslim.

I did meet with my prosecuter and agent after I eagerly sought so to let them hear some of what's in this letter of my side of the story after I was under SIS investigation. I was later told by my attorney that they informed him there is no evidence and when I wrote to him some of what is in this letter based on their request as he claimed he said they responded by saying they don't care about this stuff and that my prosecutor hates me so much and will only get information out of me and not give anything in return as she has done to his other clients in the past -as Lustig claims-.

What must be kept in mind is that I DID NOT mention conversation we had where he was crying over the death of the martyr of our time Zarqawi, according to him. Nor did I mention how he asked me to lead a prayer for the dead Zarqawi after I finish the Friday praye which I of course refused to do!!

WHAT I DID mention are matters with 100% solid proof and evidence tha does nor require my credibility because I know I lack it as a felon in prison.

They can go to the library in the chapel of Milan's FCI and see Anwar Awlaki's tapes. In his office are more of his tapes!! If he concealed them inmates who work in the chapel library or others who I know were addicted to listening to them will testify the tapes were there.

I can inform you how to obtain the book MILESTONES that he gave to inmate Robinson with the US BOP - Milan stamp on it!

They can ask inmate Robinson how eagerly Imam Curtis wanted him to study Milestones by Qutub.

Another issue brought up was books I had in my posession that ignorant agents like SIS agent Webber, and his captain Jodi claimed are radical. As the saying goes they should never judge a book by it's cover.

Every single book I had was anti-radical unlike what Curtis promotes
which are 100% radical.

Every single book was sent to me through Amazon.com a known seller
even though Milan allows books in directly from family and I have
the reciept for every one of them.

     a) The first book is (The Looming Tower and the Road to
9/11 by Wright Lawrence).
I must admit the title to illterate ignorants who can't flip the
pages to read it like the SIS of Milan and anyone else who was
invovled in the investigation is scary.

However this book is a news oriented book and Lawrence made sure to
expose Al Qaeda.

In fact I recall in it's first chapters it was talking about the
danger of MILESTONES!!! THE BOOK CURTIS passes out and wants taught!

But because there is so much justice my anti-Milestones book is labeled
radical yet Imam Curtis's Milestones is appropriate!

This is scary in that ignornat idiots who can't read the book or it's
summary consider it dangerous yet  Milestones get's passed out
by BOP official.
If these are investigators resposible for the security of this country
then may the LORD protect this country because they sure do not
know what on earth they are doing compromising the security of this
country.

     b) The 2nd book is (From Secular to Jihad).
This book talks about Qutub and shows how dangerous he is.

*I offered both of the these books to Curtis to show him how dangerous
what he passes out is and he refused to take them.

     c) (Inside Al-Qaeda).
Again this book has a scary title for illiterate investigators
who judge a book by it's cover.
If they bothered to read the continuation of the title on the
following title pages in small letters it would of said(How I infil-
trated the World's Deadliest Terrorist Organization)

This book exposes Al-Qaeda in depth.
The author had plenty of hatred in speaking about a terrorist group
he infiltrated while he was reporting about them.

     d) (The Road to Al-Qaeda).
This is also a scary title especially when the illiterate
investigators probably seen the photos of Ibn Ladin and his
right hand man on the cover.

Again had they read the little print the title would of went on to
say (The Story of Ibn LAdins Right Hand Man.

The author is an attorney in Egypt named Muntasir Al-Zayyat.  He
was a radical in prison with Zawahri(Ibn Ladin's right hand man)
in the 70's.  He turned moderate and exposed his old freind.

The author helped the Egyptian government sign a treaty with Jihadist and helped modernize the Jihadi movement in Egypt and got them to turn their weapons in and gave information on others who were arrested.

The book was pulled off the market in Egypt in Arabic because Zawahri(Ibn Lādins right hand man threatened this author and his family).  The book is now only available in English!

Basically the book exposes Al-Zawahri.

    e) (State of Denial - Bush at War`by Bob Woodward).
This is a news oriented book a top seller in the USA by one of the most famous journalists in America Bob Woodward.

    f) (Mein Kempf? by Hitler)
I had Hitler's famous book and this was the only book I took from Milan's library.  This is the only book that I did not own.

I took it from the library to read it.  I still have not done so but I certainly plan to read it.

Anyone knows what Hitler stands for and knows that the ideology of Hitler and that of Islam are like oil and water they do not mix.

    This is what happened in Milan FCI.  I stood agaisnt a radical and it costed me 8 months in the hole and instead of being rewarded or thanked I got transfered from a low security prison 20 minutes from home to a higher security(medium high) that's very dangerous and is 35 hours away from home.

Had I not opposed the radical extremist BOP official chaplain I would still be 20 minutes from home enjoying family visits and on my way to a camp because my custody level points are very low(4 points).

    My father and I also went an extreme wave of taunting, discrimin-ation and harassment by the C.O's in Milan as well as the captain herself and the chaplain Curtis among others while we were in the SHU in Milan.  We were called terrorists; that we don't deserve nothing; I was at time deprived of even food among a varity of other tactics they used on us.

    After my transfer to Three Rivers, TX - FCI is still undergo similar harassment, bullying, discrimination and targeting by the great vast majority of the staff here.

    Sometimes I wonder was standing up to Curtis the right thing to do?
It has costed me dearly and had it not been my beleif that radicals and terrorist sympathizers like Curtis are dangerous to country I would of regretted it, but I did it out of conviction and belief in that was he was doing was wrong and that brings me peace.

                                        Sincerely,
                                        Ahmad Jebril #31943-039
                                        Federal Correctional Institution
                                        P O Box 4200
                                        Three Rivers, TX 78071

Exhibit #3

①                                                    8/31/07

Dear Warden of Three Rivers F.C.I.
Mr. Dan Joslin:

I've been on this compound for approxamatelu
weeks and I've been harrassed and discriminated
gainst by nearly the entire staff with the exception
f a few.
I know I'm an inmate and would like to be treated
s a regular inmate born in Detroit, MI-USA.

Here are just some of the issues I need resolued
nd looked into:

① My first day on the compound, my first breakfast
nd meal on the compound a c.o. in the chow hall asked
re for my ID. Moments after getting into the unit at
around 7:30am a c.o. told me hang up and go to the lieutenants
office.
When I arrived there I was told I belong in the
SHU and to wait outside until they call me. I waited
in the hot sun until 10:30am then was told to go
back to the unit I'm not going to the SHU yet.
(Your staff is eager to have me in the SHU from before my arrival)

② On Sat. 8/25/07 at approx. 8.30pm walking back to
he yard I bumped into a muslim I seen in Friday
services. I gave him Islamic greetings and continued
to walk next to him when we reached L.O. unit he turned
right to L.O.B. and I turned left to L.O.A.
The next evening the muslim inmate approached me
telling me after count the C.O. (mexican who works
L.O.B edenings 4-11pm on Sat, Sun, Thurs...) pulled him out

of the cell and informed him (that he likes him) and to (st
away from me because I'm bad news).
 He told another inmate that I'm a (terrorist) and to keep a

 ③ On Sun 8/26/07 after Dinner at 6:00 pm a c.o
who I was told is a lieutenant stoped me, searched
me and told me to hold my arms out in a stretched
out position, I did so.
He found 3 pages dated that same day printed off th
internet. As he investigated them I droped my hand
because I got tired. who looks like a male
He asked a female c.o. and others next to him if I
was allowed to have internet papers.
Then asked them how I got it?
Then told me to put my hands up (Did I tell yo
To put them down) as I put them down to rest them.
He was talking belligerantly and in a disrespectful wa
Then after the disrespectful manner and rudeness he as
where I got access to the internet.
I said I was just in Chaplains Noble's office and sh
printed them for me. (Names of ~~textttttt~~ videos she ordered)
I don't mind the search as I'm always a target fo
that but why be rude, disrespectful and why hold
my arms out while he investigates the papers.
I thought holding the arms out in that manner for prolo
periods of time was only done in ABU GHRAIB Iraq Ab

 ④ I'm always targeted for searches more than
possibly any other inmate.

②

⑤ I've been to the yard in the late evening about 5 times. They stopped me to take the alcohol test 3 times at the 8:30pm move.
Check the logs on it.
The only 2 times I was <u>not</u> stopped there was no alcohol testing set-up.
3 out of 3! That's <u>RANDOM</u>.

⑥ I been treated and harrassed in many different ways which I can give details to, that's due to a briefing about me by higher authority possibly the captain or you.
It's not random how I've been treated and It's not random every C.O. here knows my name.

⑦ On Thurs. 8/30/07 around 12:00 pm I walked into chow and a staff wearing blue trousers and dress-up shirt followed me till I sat. Then he leand back on the wall listening to the conversation. I sat with 3 other black inmates that I don't know. One (who I can identify if I see him again) said brother why is that man starring you down since you walked in, and following and listening? I said (I don't know)!!
When I finished and walked out he said (Hey, why is your pants cuffed up?).
I replied (For religious reasons I can't wear pants under my ankle) nicely.
He replied (I don't belive you)
I said (I don't care what you believe)
He said (I'll check with the chaplain)

⑥ I stepped outside the chow hall then inside to get his name tag he was not wearing one.

I obserued 3 inmates 1 black and 2 mexicans walk with cuffed up pants as he stood there not telling one of the a single word. Your cuffed up pants rule only applies to me because I'm the only one with a religious reason.

⑧ On 8/31/07 I decided to tell the warden (You) as I was speaking to you that staff rudely interrupted us with a sheet of paper (saying inmates must wear their pants beb the ankle).

You got hostile and ordered me to violate my religion and uncuff my pants.

I asked you to talk to you.

You said you will not talk to me unless I uncuff m pants, after I told you I can't wear anything bel my ankles for religious reasons. ...

You ordered me again to (sit at the table and uncuff t You made me violate my religion!

You may have a policy but just like no one can w hats there is exemptions for religious kufis; exemption of policy for common fare meals; exemptions during ram for religious rituals ....etc. there is an exemption to allo me to keep my pants uncuffed!!! or above the ankle.

I asked that laundry shorten them to the ankle but you did not compromise nor would you permit me to turn to inwards. where cuffy won't show. other inmates walk as we spoke with cuffed pants but neither of you said a word to them You made me violate my religion and I wi hold you accountable for this (legally),

③

I went to the library and even though it lack
Islamic books but for about 7or8. I found the most
authentic hadith source of Islamic legislation that indi
a muslim must wear his pants above the ankle.
(Enclosed is p.397 of Sahih Muslim; Stamped property
F.C.I Three Rivers ~ml15 Chapel vol III B)

⑧ Inmates I don't know ~~said (the~~ approached me and said (The
tall A+W went to their units asking if I attend servi
on Friday and what I do in them)
He was a bit too ignorant to realize he was
asking Nation of Islam members not sunni who I
Why is he asking? Isnt dur enough cameras to see what I'm doing?
Why is he arising the suspicion of inmates.

⑨ On Mon. 8/27/07 at 9:00am I had a call out for property, and in
A+◯ they informed us to bring bags.
I asked LOA (my unit) C.O. for a army bag he had to
get my stuff.
He told me I'll give you one to pack up and get yo
to the hole. (easer staff that want me in the SHU)
Property C.O. was kind enough to loan me an army bag
and as in A+O told me I should have brought one in.
I then asked the C.O. at 10:30am for toilet paper. W
had none.
He smurked and said Counselor give that not me.
Our counselor was off and we had no toilet paper.
I then ~~seen~~ seen an inmate with 2 rolls; I asked how
got it, he said from the same C.O who denied me.

<u>Warden</u>

I have a white collar, non-violent case, there is not a single inmate on your compound that has a crime as petty and non-violent as my (fraud - Jury) Tampering case. ~~the Biggest guy~~

There is no one on your compound that has a less custody levels than me. <u>I got 4 custody level points</u>

I was <u>never</u> informed the details of ^why I got transferred from a low- 20 minutes from home, to 35 hours away to a high medium with 4 camp points!

I demand a hearing so I can know what I did and give my side of the story.

I'm <u>NOT</u> a terrorist! if I was I would not be afraid to say it, but I'm <u>not</u> a Radical, nor an extremist nor a terrorist!
I'm against that.

I'm not a coward to hide my faith, I will stand up for what I believe as in the <u>pants issue</u>! If I was a terrorist I would say so, you people don't scare me with your illegal, harrassing and discriminate tactics, BUT I'M NOT A TERRORIST!!!

I'm against radicals, extremist, and terrorists. I stood against a muslim chaplain in Milan because he was promoting radical books & tapes. So he lied and placed me in SIS I can prove this 100% but no one even asked me or told me anything. If you like to hear my side I can explain



There are many other petty instances of C.O. harasse___
I don't want to make this any longer. for you.

I appreciate a response so I can follow up with regional and general councel if this is not resolved.

Again I kindly ask every point be looked into and I be transferred to a camp near home.

In the meantime I will minimize going to your chow hall and depend more on my locker food unless I have to go to avoid you and your staff ordering me to violate my religion and to minimize exposure to your staff so they will not harrass, bully and discrimin___ against me.
<u>You are legally responsible for this.</u>

I'm not the type to disobey any of your rules, I've been down 3 years with only one 300 series phone shot, whic___ was a error I did by mistaking my pac# with my dad's and using it. I want to and will obey all rules but I will not let my rights violated!

Thank You for reading this and I hope I will have justice through you.

Sincerely

Ahmad Jebril
31943-039

For the record!

P.S. ① If this is your staff's attitude towards me what are you all going to do to me if god forbid I unintentionally make a mistake!!

② For your information I don't know any Muslim personally. I don't know any one of their names. I greet the ones I see _~~total~~_ Islamically and that's th If I can't talk or greet certain women or so to services let me know. I will not disobey

③ On Sun, 8/26/07 at 4:45 pm I had a talk with chaplain Noble and she answered concerns I had and was extremely helpful.

④

United States District Court
Southern District Court


Ahmad Jebril
Inmate #31943-039
Federal Correctional Institution
P O Box 4200
Three Rivers, TX 78071

v.

Dan Joslin
(Warden of Three Rivers FCI- Texas)

Joseph Higgerson
(Captain of Three Rivers - FCI)

C. Eichenlaub
(Warden of Milan FCI - Michigan)

Mukhtar Curtis
(Head Chaplain of Milan FCI - Michigan)

Jodi Bradly
(Captain of Milan FCI - Michigan)


## BRIEF AND MEMORANDUM
## IN SUPPORT OF §2241 Petition

<u>MEMORANDUM IN SUPPORT OF PETITION</u>

Prisoner is entitled to writ of habeas corpus when though lawfully in
custody, he is deprived of some right to which he is lawfully entitled
even in his confinement, deprivation of which serves to make his imprison-
ment more burdensome than law allows or curtails his liberty to greater
extent than law permits.  Coffin v. Reichard (1944, CA6 Ky) 143 F2d 443,
155 ALR 143.

In my situation not only did the BOP in general and Three Rivers, FCI in
specific make my custody burdensome but they violated my essential rights,
and went on to harass me every possible way they can targetting me,
discriminating against me, bullying me and violating my religious
and contitutional rights.

Allegations of single, non-recurring assault of federal prisoner by guard
force does not state claim for habeas corpus relief.
Allegations for continuous recuring matters as in my situation and condi-
tion especially after the fact that I attempted to resolve this in every
means available before exhausting BOP remidies before filing this.
My attempts went in vain and in fact made the staff treat me even
worse.
Mason v. Ciccone (1975, CA8 Mo) 517 F2d 73.

It was error to deny petition seeking habeas corpus relief without requir-
ing answer, where federal inmate claimed he was entitled to notice and
hearing regarding proposed transfer from federal reformatory to federal
penitentiary; failure to grant either notice or hearing constituted
denial fo due process.
Bryant v. Hardy (1973, CA4 Va) 488 F2d 72.

In my case I was placed in the HOLE/SHU in Milan FCI for 8 months and then
transferred outside my region 35 hours from home to Three Rivers, FCI who
discriminate against me and mistreat me yet not a single hearing was held
nor was I told why this went on either in Milan or Three Rivers ignoring
my requests to find out what's going on violating my due process rights.

There is federal habeas corpus jurisdiction under 28 USCS § 2241 over
complaint of federal prisoner who is challenging not validity of his original
conviction by imposition of segregated confinement without elementary
procedural due process and without just cause.
McNair v. McCune (1975, CA4 Va) 527 F2d 874

Minimum due process required that District Court conduct in camera review
of entire investigation file, not only material relied on to find guilt,
to determine whether exculpatory information existed which should have
been disclosed to prisoners in disciplinary hearing.
Cambell v. Henman (1991, Ca7 Ill) 931 1212.

Although petitioner's designation as "special offender" did not impede his
efforts to attain reduced custody, furloughs, or parole, sufficiently
adverse consequences flow from "special offender" designation as to
justify due process protection and relief or habeas corpus in line with
newly promulgated federal prison procedure.
U S ex rel. Addonizio v. Arnold (1976, MD Pa) 423 F Supp 189.

My due process rights by the federal prisons I was in (Milan & Three Rivers)

their designation, label they placed on me and treatment violated
my due process protection.  The result of the transfer and it's
implication in the treatment I get also violated my civil rights
to be treated like any ordinary inmate.

Pretrial detainee is discharged from segregation and his visitation and
telephone privileges are restored, where detainee was summarily ordered
placed in isolation for 90 days for allegedly attempting to escape and
to bribe correctional officer, because sanction imposed constitutes
punishment and serves no legitimate regulatory purpose in effective
management of correctional institution in violation of substantive
due process.
Cullazo-Leon v. U S Bureau of Prisons (1994, DC Puerto Rico) 855 F
Supp 530, habeas corpus proceeding, remanded (1995, CA1 Puerto Rico)
51 F3d 315.

The sanctions imposed on me as well by transferring me 35 hours away from
my home and region as well the prison staff treatment due to a memo that
was sent to them warning of me is a sanction that constitutes a punishment
not only without due process but I don't even know why nor was I informed
why.
Taking me away from my region and family constitutes a sever punishment
and serves no legitimate regulatory purpose in effective management of
correctional institution in violation of substantive due process.

Federal inmate's challenge to disciplinary sanctions of transfer plus
forfeiture of 150 days of statutory good time must fail, where inmate
was found guilty of marijuana use - offense of greatest severity
for which he could have suffered forfeiture of all 860 days of good time,
because community corrections manager did not inflict cruel and
unusual punishment.
Mazzant v. Bogan (1994, ED Mich) 866 F Supp 1029.

The court allowed inmate to petition his disciplinary sanction and transfer
as a result of that to determine if it was cruel and unusual.
I had absolutely no disciplinary hearing or notice or process yet I get
transferred out of my region to a higher security prison and a much higher
level than my appropriate designation which is a camp and I'm treated
in the worst way staff can  treat me due to whatever they were told and
informed about me which I still don't know.

In order to grant relief under 28 USC8 § 2241 petitioner must be in
custody within territorial jurisdiction of district court and his
custodian must be within reach of its process.
Perez-Jimenez v. Laird (1971, DC Puerto Rico) 325 F Supp 457.

I'm in custody of the district court that I send this petition to and
custodian is within reach of its process.
The other previous custodians are named in the suit as possible witnesses
to their actions and statements in originating this discriminatory
transfer and treatment that I endure, they are essential witnesses
who must be named in the petition.  Current custodian is within reach
of courts process as he is responsible for my present condition and
his insistence on this discriminatory transfer and treatment.

Federal prisoner seeking only injunctive relief must first exhaust adminis-
trative remedies provided by the Bureau of Prisons, when seeking injunc-
tive relief.
Bourke v. Thompson (1993, CA5 Tex) 11 F3d 47.

PAGE 2

Petitioner has exhausted all formal and informal administrative remedies provided by the federal Bureau of Prisons.

Writ of habeas corpus is flexible judicial remedy used to insure that miscarriage of justice within its reach are surfaced and corrected. Gilroy v. Ferra (1982, WD NY) 534 F Supp 321.

There is gorss miscarriage of justice within the reach of this district court that can only be corrected by the court through this flexible judicial remedy.

Language of 28 USCS § 2241(a) authorizing writs of habeas corpus to be granted by District Courts "within their respective jurisdictions does not limit District Court's habeas corpus jurisdiction to cases where prisoner seeking releif is confined within its territorial juris-diction, read literally, language of § 2241(a) requires nothing more than that court issuing writ have jurisdiction over prisoner's custodian; so long as custodian can be reached by service of process, court can issue writ within its jurisdiction requiring that prisoner be brought before court for hearing on his claim, or requiring that he be released outright from custody, even if prisoner himself is confin-ed outside court's territorial jurisdiction. Braden v. 30th Judicial Circuit Court (1973) 410 U S 484, 35 L Ed 2d 443, 93 S Ct. 1123.

If words "within their respective jurisdictions" in 28 USCS § 2241 mean anything more than that the court may act only if it has personal juris-diction of proper custodian and capacity, within it's geographic boundaries, to enforce its orders, physical presence of petitioner within district is not invariable jurisdictional prerequisite, and it gives way in face of other consideration of fairness and convenience. Word v. N. Carolina (1969, CA4 N C) 406 f2d 352.

Habeas corpus is an extraordinary remedy whose operation is to a large extent inhibited by traditional rules of finality and federalism, its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which restraints on liberty are neither severe nor immediate. Hensley v. Municipal Court, San Jose-Milpitas Judicial Dist. (1973) 411 US 345, 36 L Ed. 2d 294, 93S Ct 1571.

My case and what I went through of transfer and that which I endure is clearly of extreme and special urgency.

Writ of habeas corpus can reach behind prison walls and iron bars, but it is not static, narrow, formalistic, its scope also including protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. Jones v. Cunningham (1963) 371 US 236, 9L Ed 2d 285, 83 S ct 373, 92 ALR2d 675.

My petition for 2241 habeas corpus clearly shows wrongful restraints upon my liberty.

Writ of habeas corpus is flexible judicial remedy used to insure that miscarriages of justice within its reach are surfaced and corrected. Gilroy v. Ferro (1982, WD NY) 534 F Supp 321.

PAGE 3

Petition will clearly show miscarriages of justice in petitioners situation within the reach of the court.

Exgaustion of administrative remedies is required before habeas relief may be granted.
US ex rel. Carrasquille v. Thomas (1981, SD NY) 527 F Supp 1105, affcl (1982, CA2 NY) 677 F2d 225.

Petitioner as indicated has exhausted all formal and informal administrative remedies provided by the federal Bureau of Prisons.

Irreparable harm is an excuse to exhaust administrative remedies or if remedies would be futile.

Exhaustion of remedies was not a jurisdictional requirement of § 2241 when one would be irreparably harmed because petitioners originally scheduled graduation date was 5/1/06 and further delay would prevent him from obtaining remedy.
Barq v. Daniels (2006, DC Or) 428 F Supp 2d 1147.

Inmates failure to exhaust remedies would of been futile.  She persued action to prevent government from transferring her from community corrections center to federal prison camp.
Ferguson v. Ashcroft (2003, MD La) 248 F Supp 2d 547.

Inmates failure to exhaust his administrative remedies prior to filing his 28 USCS § 2241 petition was excused where not only would administrative appeal have been futile, but without immediate relief by court inmate could have suffered irreparable harm; if inmate had been required to pursue  administrative remedies prior to bringing his action, he would likely have been serving much if not all his time and request would become moot.
Pimentel v. Gonzalez (2005, ED NY) 367 F Supp 2d 365.

As previously indicated twice before petitioner did exhaust all administrative remedies, however there are recurring incidents of harassment that I need not exhaust administrative remedies on since I had already done so to the broad issue of harassment, discrimination, bullying and targetting by certain officers. Exhausting administrative remedies on the broad issue and specifying some situation relieves me of having to exhaust the remedies when filing the §2241 petition if some later incidents occur between exhausting my remedies and filing of §2241 if I decide to use some of the specific latter situations in the §2241 petition.

Also, the process of exhausting administrative remedies regarding my transfer from a low prison to a much higher security prison outside my region without any due process and constituting cruel and unusual punishment began while I was in Milan FCI - Michigan.  I continued the procedure after being transferred to Three Rivers - FCI in TX.  I need not begin the procedure of exhausting the remedy regarding transfer all over after my transfer because the matter is the same and the higher agencies where remedies were sent to would be the same and that would prolong my suffering and be futile.

Prisoner was entitled to habeas relief under 28 USCS § 2241 on his claim which alleged that his contitutional rights were violated when he was removed from his originally assigned class under Bureau of Prisons (BOP) Drug & Alcohol treatment Program (DAP) and placed in another class

PAGE 4

that graduated on later date thereby extending his scheduled release date, because it was arbitrary and capricious and abuse of discretion under 5 USCS §706 (2)(a).

My transfer from Milan FCI in Michigan 20 minutes from my house to a medium Three Rivers, TX - FCI over 35 hours away from my house and region violated my due process rights, constitutional rights and is by no doubt arbitrary and capricious and abuse of discretion.

Fderal Court in District of confinement may entertain by habeas corpus state prisoner's challenge to adverse effects or conditions of his confinement resulting from filing of foreign detainer, but challenge in that court to validity of underlying charges fails for lack of in personam jurisdiction over prosecuting officials in demanding state.
Braden v. 30th Judicial Circuit Court (1973) 410 US 484, 35L Ed 2d 443, 93S Ct 1123.

Petitioner seeks relief from this court regarding adverse effects and conditions of confinement.

11/13/07
Date

Signature of Petitioner
Ahmad Jebril #31943 039
Federal Correctional Inst.
P O Box 4200
Three Rivers, TX 78071

**Page 5**

United States Courts
Southern District of Texas
FILED

DEC 12 2007

Michael N. Milby, Clerk of Court

**Clerk** of The court
Southern District Court
1133½ N. Shoreline Dr.
Corpus Christi, TX 78401

Case: 2:07 cv 436

Dear Court Clerk:
On 11/13/07 I sent a formal §2241 petition that was returned to me as FILED on 11/19/07.

On 11/29/07 I recieved an order dated 11/9/07 that I need to use a certain type of form.

On 12/1/07 I sent a letter inquiring if there was an overlap in the mail.  Because initially I sent a letter asking for an attorney which was construed as a §2241 petition.  After it was denied I sent in a §2241 petition with all esential information of general petitions in it.

Enclosed is a form for §2241 that your court provides that I found in our library.
If my §2241 petition is sufficient  that was filed on 11/19/07 then please disregard this!
If my §2241 petition filed on 11/19/07 is not sufficient then please use the enclosed petition.

The reason I'm sending this is because I did not get a response to my questions regarding mail overlapping so I sent this to avoid risking my case being dismissed.

Please keep me informed.

Sincerely,

Ahmad Jebril
#31943-039
Federal Correctional Institution
P O Box 4200
Three Rivers, TX 78071

UNITED STATES DISTRICT COURT FOR THE _Southern_ DISTRICT OF _Texas_
_____ DIVISION

## § 2241 HABEAS CORPUS PETITION FORM
## TO BE USED BY PRISONERS IN ACTIONS UNDER 28 U.S.C. § 2241
### OR IN ACTIONS CHALLENGING REMOVAL PROCEEDINGS

United States Courts
Southern District of Texas
FILED

DEC 1 2 2007

Michael N. Milby, Clerk of Court

**Ahmad Jebril**
_____,

Inmate/Alien # ___**31943-039**_____.

**P O Box 4200**
**Three Rivers, TX 78071**
_____

**Three Rivers - Federal Correctional Institution**
_____

(Enter full name of Petitioner,
prison number or alien [A] number, if applicable,
AND address of place of confinement.)


vs.                                         CASE NO: **2:07cv436**_____

**Dan Joslin** **(Warden of Three Rivers FCI)**       (To be assigned by Clerk)

**Joseph Higgerson** **(Captain of Three Rivers FCI)**

**C. Eichenlaub (Warden of Milan FCI - Michigan)**

~~**Mukhtar Curtis** **(Head Chaplain of Milan FCI - Michigan)**~~

~~**Jodi Bradly** **(Captain of Milan FCI - Milan, Michigan)**~~
_____

(Enter name and title of each Respondent.
If additional space is required, use the blank
area below and directly to the right.)




### ALL APPLICANTS MUST COMPLETE THIS ENTIRE FORM

## ANSWER ALL OF THE FOLLOWING:

1. This petition concerns (check where applicable):

   (a).   ☐   a conviction
   (b).   ☐   a sentence
   (c)    ☐   prison disciplinary action or other action resulting in lost gain time credits
   (d).   ☐   parole
   (e).   ☐   immigration/removal
   (f).   ☒   other (explain):   ~~**Prison transfer and severe prison conditions in higher security prison**~~

2. Provide the following information regarding the conviction(s) and sentence(s) for which you are presently incarcerated:

   (a).   Name(s) and location(s) of court: **United States District court  for Eastern District in Detroit, Michigan**

   (b)   Case Number(s): **05-CR-80175-DT-02 and 03-80810-01**

   (c).   Charge(s) for which you were convicted:   **Fraud and jury tampering**

   _____

   _____

   (d).   What was your plea? (Check one)
   (1) Not Guilty          ☒ XX
   (2) Guilty              ☐
   (3) Nolo contendere     ☐

   (e)   Did you appeal from the judgment of conviction?        Yes  ☒        No ☐

3. If you did appeal, answer the following:

   (a)   Name of Court: **Sixth Circuit Court of Appeals** Case #: **06-1139**

   (b)   Result: **Pending**

   (c)   Date of opinion and mandate (citation, if known): _____

   _____

4. Claims that challenge your conviction or imposition of sentence can only be raised by motion under 28 U.S.C. § 2255 unless the § 2255 motion is inadequate or ineffective to test the legality of your detention. If any of the grounds raised above challenge your conviction or sentencing:

   (a) Have you filed a motion under 28 U.S.C. § 2255?
       Yes ☐         No ☒
   If yes, please provide the case #, where filed, relevant date(s), and the results: _____

   _____

   _____

   _____

(b). Explain why the remedy under § 2255 was or is inadequate or ineffective: _____

       **N/A**

_____

_____

_____

_____

5    Are you currently represented by counsel in this case or in any other court case?

      Yes ☒   No ☐  **Attorney Thomas F. Goeke, Jr. in Covington, KY.**
  If yes, please explain· _____

6    If this case concerns removal proceedings·
    (a) Date of final order of removal: _____

    (b) Did you file an appeal with the Board of Immigration Appeals?   Yes ☐     No ☐

7.   In the spaces below, set forth every ground which supports your claim that you are incarcerated unlawfully.  Briefly summarize the specific facts in support of each ground raised.  Conclusions that are not supported by specific facts are insufficient.  You may attach additional pages if necessary to raise additional grounds or provide additional facts.  Do not cite any law in your statement of facts

(a)  Ground one:    **I was held illegally in a SHU-Hole (solitary) for 8 months
and to this day I was not informed why. This was in Milan - MI.
Please See P. 7 for specifics of claim(grounds & facts)**

_____

_____

Supporting FACTS (state *briefly* without citing cases or law)  **I was deprived of rights that
serve nothing but to make my imprisonment burdensom than law permits
without an elementary due process.**

_____

_____

_____

_____

Exhaustion:
[1] - Have you presented ground one to the Bureau of Prisons, either through the prison grievance
system or other administrative proceeding?
     Yes ☒  No ☐
If yes, please provide the results of the proceeding(s) and the relevant date(s).  Include any appeals:

   **See Exhibit 1 for copies of documents that I exhausted my remedies.
They claimed I was under SIS investigation.**

_____

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground one to the Board of Immigration Appeals?                      Yes ☐          No ☐
If yes, please provide the results of the proceeding(s) and the relevant date(s). _____

(b)   Ground two:   I was transfered from Milan - Michigan 20 minutes from
                    my house to a much higher security prison (Three Rivers - F
                    in TX over 35 hours from my region.
                       Please see P. 7 for specifics of claim (grounds and
                    facts)

Supporting FACTS (state *briefly* without citing cases or law): _____ They moved me after taking me
out of the SHU.   This transfer is unjustified. They placed a mangemen
variable to deprive me of going to a camp.   My points now are at a c
level. Others with my custody points are in camps but they chose to
discriminate against me and make my imprisonment as difficult as the
can.   I'm in a medium prison which endangers my life because I'm not
affiliated with gangs nor am I at the level of inmates here.
They also deprived my family of seeing me.   My ill mother can by no
means travel 35 hours nor can she afford it.

Exhaustion:

[1] - Have you presented ground two to the Bureau of Prisons, either through the prison grievance system or other administrative proceeding?
              Yes ☒   No ☐
If yes, please provide the results of the proceeding(s) and the relevant date(s).  Include any appeals:
   See Exhibit 1 of all documentation my me exhausting the administrat
remedy proceeding.
They basically said it's up to the warden to do as he wants.

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground two to the Board of Immigration Appeals?                      Yes ☐          No ☐

If yes, please provide the results of the proceeding(s) and the relevant date(s). _____

(c).   Ground three:        In my stay in Milans SHU while under investigation and
after I was transferred to Three Rivers- TX where I currently am
I've been trated in the worst manner an inmate can be treated.
I've been harassed, bullied, targetted and discriminated against
in different ways and means.
Please see P. 7 for Specifics of claim(grounds and facts)

4

Supporting FACTS (state *briefly* without citing cases or law)   **This is discrimination**
**violation of my rights and more so violation of human rights.**

Exhaustion:

[1] - Have you presented ground three to the Bureau of Prisons, either through the prison grievance system or other administrative proceeding?

Yes ⊠   No ☐

If yes, please provide the results of the proceeding(s) and the relevant date(s)   Include any appeals:

**See Exhibit #1.   They did not take time to investigate my situation**
**instead they referred everything back to the rights of the Warden**
**where I'm held.**

[2]-(Answer only if you are challenging an issue related to removal (immigration) proceedings) - Did you present ground three to the Board of Immigration Appeals?   Yes ☐   No ☐

If yes, please provide the results of the proceeding(s) and the relevant date(s). _____

(d). Ground four: _____

Supporting FACTS (state *briefly* without citing cases or law) _____

Exhaustion:

[1] - Have you presented ground four to the Bureau of Prisons, either through the prison grievance system or other administrative proceeding?

Yes ☐   No ☐

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT

**Ahmad Jebril**
Inmate # 31943-039
Federal Correctional Institution
P O Box 4200
Three Rivers, TX 78071

v.

**Dan Joslin** (Warden of Three Rivers Federal
Correctional Institution - Texas)
**Joseph Higgerson** (Captain of Three Rivers
Federal Correctional Institution - Texas)
**C. Eichenlaub** (Warden of Milan Federal
Correctional Institution in Michigan)
**Mukhtar Curtis** (Head Chaplain of Milan
Federal Correctional Institution in Michigan)
**Jodi Bradly** (Captain of Milan Federal Correctional
Institution in Milan, Michigan)

Application For Federal Writ
Of Habeas Corpus Under 28 U.S.C. § 2241

**PLACE OF CONFINEMENT:**
I'm currently an inmate at Three Rivers Federal Correctional
Institution in Three Rivers - Texas.

**NAME AND LOCATION OF COURT WHICH ENTERED CURRENT CONVICTION:**
I was convicted in the United States District Court for Eastern
District Court of Michigan.
Docket #: 05-CR-80175-DT-02 and 03-80810-01.

**BASIS FOR PETITION:**
Basis for this petition relates to prison transfer and prison
condition.

**NAME AND LOCATION OF THE INSTITUTION WHERE THE INCIDENTS AND/OR
EVENTS COMPLAINED OF OCCURED:**
Events originated in Milan. Michigan - FCI and continued on
to Three Rivers - FCI where I'm currently confined and where
the matter is still ongoing.

**COMPLAINTS:**
While serving time in Milan FCI I was taken to the Special Housing
Unit(SHU) for eight months without and due process and then
ordered transferred to Texas, Three Rivers - FCI a much higher
security prison outside my region and far from family.  In both
Milan and Three Rivers staff targetted me, bullied me, harassed me
and discriminated agaisnt me.

**GRIEVANCE PROCEDURE:**
On 6/4/07 I filed a request for an informal attempt of an adminis-
trative remedy.

After Counselor and unit manager returned it on 6/5/07 signed
"unable to informally resolve", I then filed a request  for
administrative remedy to the Warden (BP-9) on 6/6/07.
On 6/20/07 Warden Eichenlaub indicated I'm no longer appropriate
to be in Milan FCI because he alleges I attempted to organize
private religious meetings.

On 6/27/07 I filed an appeal to the regional director (BP-10).
I stated more facts and circumstances regarding my transfer and
treatment of staff.

On 7/12/07 Regional Director Nally responded "we have reviewed your
appeal and determined the Warden's response dated 6/20/07 thoroughly
addresses your concerns.

On 8/3/07 I filed an administrative remedy appeal to the central
office of the Federal Bureau of Prisons in Washington, D.C.

After I did not receive a response I sent in several letters
requesting a response because the response due date of 9/22/07
had passed.

On Oct. 9, 2007 administrator Watts from national inmate appeals
responded saying "As noted by the regional Director, based on
SIS investigation staff determined you were no longer appropriate
for FCI Milan and required greater security".

### SPECIFICS OF CLAIM(grounds, and supporting facts):
On 12/11/06 in Milan FCI I was escorted to the special housing unit
(SHU) along with my father Musa Jebril #31942-039.
We had absolutely no idea why we were taken to the SHU and all the
staff refused to inform my why I was taken to the hole other than a
notice they gave me stating that I'm under SIS investigation.

I assumed it was related to conversations and issues I discussed
with head chaplain of Milan (Mukhtar Curtis) who was promoting
the most radical brand of Islam and I have solid proof of that.

I have in a safe place a book he promoted called (MILESTONES by
Sayyid QUTUB) considered the spiritual manifesto of the terrorists
and the spark that started the radical and terrorist groups of
our time.  He was personally handing this book out to inmates to
study it and read it.  It is stamped with US BOP Milan Chapel's
property.  I HAVE THIS SOLID EVIDENCE IN A SAFE PLACE.  This was
one of many issues I was against and spoke to him about.
Exhibit #2 has much more details of most of what transpired between
me and Chaplain Mukhtar Curtis.
Knowing that and how evil Mr. Curtis is in how he boasters how his
memo's destroy anyone and in fact boasters that it was his memos
that destoryed father Howard and sister Pat his co-workers for him
to become the head chaplain.  Knowing all that about him I assumed it
was his memo that put us in the SHU resulting in an SIS investigation

I pleaded with the staff in the SHU to speak to someone about
Curtis before he hides evidence of radical material throughout
the prison.

On 12/14/06 I was finally able to speak to SIS - Agent (WEBBER). The meeting lasted less than 5 minutes and he had no interest in what I had to say nor did he officially inform me why I was in the hole.
After listening to what I informed him about Curtis he only asked one question regarding 5 books I had in my property that he thought were radical and accroding to him I should not of had in Milan. Please see Exhibit #2 for the titles and authors of what Webber assumed were radical books.

On 1/9/07 I arranged through my attorney to meet with my agent and Assistant US attorney Ms. Oberg.  I informed them of what I know of Curtis's activities and this was based on my persistent request. In fact the first words Ms. Oberg said was "we are here at your invitation what do you want to tell us".

I spent 8 months in Milan's SHU where I was mistreated, bullied, harassed and taunted by staff there who had been informed that we are terrorists.

The Captain of Milan FCI Jodi Bradly passed my cell telling a SHU officer "You should read the last report we got on Jebril's the terrorists.  When he used to see ........ shout Akbar..".  The .... are words I could not make out as she was speaking.

There were times I was deprived of meals and when I asked for it I was informed by staff that "we don't feed terrorists".

I was not given access to my property as others were and most of my property was missing.  I have filed a $1055 tort claim of missing property.

There are countless issues like that.

After 8 months in the SHU I was suddenly informed that I will be transferred to another prison.  I was not informed why or where until I stepped foot in Three Rivers, TX - FCI a medium high prison over 35 hours away from my region.

My custody level is 4 points which means I'm at a camp level because anything under 11 points is camp level.
This transfer to a higher security prison was not all they violated me in but they moved me from my region where I was 20 minutes from my house to a prison in TX 35 hours from my house.

<u>This transfer to a higher security prison and 35 hours outside my region</u> is a clear violation of my due process rights because a management variable was placed on my custody level without a disciplinary hearing or any type of notice let alone any elementary procedural due process and this transfer was WITHOUT just cause.

This transfer constitues cruel and unusual punishment and serves no legitimate regulatory purpose.  It is a sanction they imposed on me that constitutes a SEVERE punishment and the transfer along with labeling me a "terrorist" as staff warn inmates about me and mistreat me both in Milan FCI and now here in Three Rivers FCI deprive me of rights I'm entitled to even in my confinement; deprivation of which

Page 8

<u>of which serves no purpose other than to make my imprisonment more
burdensome than law allows and curtails my liberty to greater extent
than law permits.</u>

I'm at a medium high prison with inmates of a much higher custody level
than me in fact I'm the lowest custody level inmate in the entire prison
which is very dangerous because they are all affiliated with groups
and gangs and I'm not.  They have purposely sought to place me in
danger with higher security inmates.

As a result of this transfer my ill mother who never missed a single
visit when I was in Milan - FCI is no longer able to visit me due to
her health condition as verified in my PSI and due to our financial
condition where she could not afford to visit me 35 hours away finan-
cially even if her health permitted her.

They could have placed me in a Medium security prison in my region
where my mother could visit me but they only sought to inflict harm
and punishment that constitues no legitimate regulatory purpose
in effective  management of correctional insitutions in violations
of my rights.

As a result of this transfer I was mistreated in my stay in Milan- SHU
and here in Three |iivers TX - FCI staff continue to mistreat me.
They bully me, target me, discriminate agaisnt me and harass me
in the worst way one can imagine.
Exhibit # 3 is a letter I wrote to Three |iivers FCI warden regarding
mistreatment by his staff only two weeks after I arrived here.
The letter served no purpose but to make things worse after it.

Matters have gotten so bad by staff targetting me that I no longer
step foot in the chow hall so they stepped up harassment by the
metal detector/shack area where I must pass.

I was informed that prior to my arrival on Three |iivers compound a
memo was sent to every single staff warning about me that resulted
in this type of treatment against me.  I would like the court to order
discovery of that memo.

Staff in Three |iivers TX have been warning other inmates not to talk to
me because I'm bad news and/or a terrorist.

I ask that this unjust transfer be heard before your honorable court
and I be permitted to a hearing to show that I belong in a camp in
my region and also be given time off due to the mistreatment of
staff in both Milan and Three |iivers.

I also ask that discovery of all documentation be presented to the
court and myself prior to any hearing that was used to order my
transfer, label and mistreat me.

I initiated informal and formal remedies in Milan and continued them
during my stay in Three |iivers - TX where I received the final
response  pertaining to my transfer and discrimation in Three |iivers
from the Federal Bureau of Prisons in Washington, D.C. on 10/9/07.
Exhibit # 1 are copies that I exhausted all BOP remedies regarding
this matter.

I also ask that no retaliatory tactics be used agaisnt me for filing
this petition by Three Rivers - FCI.
It is widely known throughout the system that when many remedies or
petitions as this are filed the prison transfers the inmate or
places them on what's called "diesel therapy" transferring them from
one place to another to avoid responding to this or attempting to
render it moot.

I ask that if they do any of that, that I proceed with my petition
to recieve justice unless they place me in a camp prison in my region and
stop the discriminatory treatment and the living hell they are
putting me through.


I declare under penalty of perjury that the foregoing is true
and correct.

11/13/07
_____
Date

_____
Signature of Petitioner

PAGE #10

Ahmad Jebril
#31943-039
Federal Correctional Institution
P O Box 4200
Three Rivers, TX 78071

legal mail

United States Courts
Southern District of Texas
FILED

DEC 12 2007

Michael N. Milby, Clerk of Court

Clerk Of the Court
Southern District Court
1133 N. Shoreline Dr.
Corpus Christi, TX 78401

78401+2003 C022