**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

AHMAD JEBRIL,

        Plaintiff,

v.

        Case No. 08-10151

AGENT WEBBER, C. EICHENLAUB,
MUKHTAR CURTIS, JODI BRADLEY,

        HON. MARIANNE O. BATTANI

        Defendants.

_____/

**OPINION AND ORDER ACCEPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**I.    INTRODUCTION**

Before the Court is Plaintiff Ahmad Jebril's Objection to the Magistrate Judge's Report and Recommendation ("R&R") that this Court grant Defendants' Motion to Dismiss. (Doc. 36). Jebril's complaint claims that his rights were violated when he was placed in the Special Housing Unit ("SHU") and harassed, and when he was transferred from the Federal Correctional Institution in Milan, Michigan ("FCI Milan"), to the Federal Correctional Institution in Three Rivers, Texas ("FCI Three Rivers"). For the reasons discussed below, the Magistrate Judge's R&R is accepted in part and rejected in part, and Defendants' Motion to Dismiss is granted in part and denied in part.

**II.     STATEMENT OF FACTS**

As this is a motion to dismiss, the Court will construe the complaint in the light most favorable to Jebril, and accept his factual allegations as true.  See Allard v. Weitzman, 991 F.2d 1236, 1240 (6th Cir. 1993).  Some of Jebril's allegations are drawn from the exhibits that he attached to his complaint.  See Bassett v. N.C.A.A., 528 F.3d 426, 430 (6th Cir. 2008).  The Court notes, however, that it only considers claims set forth in the complaint and will not consider any subsequent allegations not included in the complaint.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Jebril's complaint states that in 2006 Defendant Mukhtar Curtis, the head chaplain at FCI Milan, was promoting a radical brand of Islam at the prison.  Jebril, a Muslim who was housed in the prison, began isolating himself from Curtis and his followers in September 2006 because of Curtis's promotion of radical Islam.  Between September 2006 and December 2006, Jebril sent Curtis three official "cop-outs" requesting permission to use a monitored classroom for interfaith gatherings.

On December 10, 2006, after Curtis received the third "cop-out" from Jebril, Curtis had Jebril brought to him.  Curtis expressed outrage over Jebril's desire to have interfaith gatherings and claimed that interfaith gatherings were against Islam.  He then told Jebril that he needed to declare himself to be a non-Sunni Muslim.  The next day, Jebril and his father were taken to the SHU.  Jebril believes that Curtis had him investigated and placed in the SHU.

While in the SHU, Jodi Bradly, the Captain of FCI Milan, passed Jebril's cell and said to an SHU officer, "You should read the last report we got on Jebril's the terrorists.

When he used to see . . . shout Akbar . . . ."[1]  Among the "countless issues" that Jebril experienced in the SHU, he was called a terrorist, he had his legal mail opened and confiscated, and some of his property was missing.  In addition, Jebril was told "we don't feed terrorists," and deprived of meals.

Approximately eight months after being placed in the SHU, Jebril was informed that he was being transferred to FCI Three Rivers, a medium security prison.  Jebril alleges that a memorandum was sent to FCI Three Rivers staff that resulted in him receiving additional mistreatment following his transfer.

### III.  STANDARD OF REVIEW

A district court must conduct a *de novo* review of the parts of a Magistrate Judge's R&R to which a party objects.  28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir.1985). Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir.1987).

Federal Rule of Civil Procedure 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief may be granted."  "This rule

---

[1] The ellipses represent parts of the statement that Jebril asserts he could not understand.

allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if every allegation in the complaint is true." Tidik v. Ritsema, 938 F.Supp. 416, 421 (E.D. Mich. 1996).  Thus, when faced with a Rule 12(b)(6) motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff, [and] accept all factual allegations as true." Allard, 991 F.2d at 1240.  To defeat a motion to dismiss, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) and 12(b)(6).

## IV. ANALYSIS

As the Magistrate Judge observed, Jebril's complaint is properly viewed as a civil rights action despite the fact that it purports to be an application for a writ of habeas corpus.  (See doc. 35 at 2).  To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the U.S. Constitution or federal law; and (2) that the right was violated by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).  Such claims also may be made against federal actors under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

The Magistrate Judge recommended that Jebril's claims be dismissed because neither his placement in the SHU and the harassment he suffered there nor his transfer to FCI Three Rivers constituted a violation of his constitutional rights.  For the reasons discussed below, the Magistrate Judge's recommendation is adopted in part and rejected in part.

As an initial matter, Jebril claims that he was marked as a terrorist and harassed by the staff at FCI Three Rivers because of letters that the staff at FCI Milan wrote

about him.  These allegations fail to make out a violation of any of Jebril's constitutional rights by these Defendants, all of whom are staff at FCI Milan.  Accordingly, the Court dismisses any claims against the staff at FCI Milan that are based on what the staff at FCI Three Rivers did to Jebril.

1.   *Due Process Claims*

The Fifth Amendment prohibits any person from being deprived of life, liberty, or property without due process of law.  See U.S. CONST. amend. V.  Therefore, individuals seeking to make a due process claim must establish that one of these interests is at stake.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (addressing the Fourteenth Amendment's Due Process Clause).[2]

The Court finds that Jebril's allegations concerning his eight-month detention in the SHU do not show a violation of his rights under the Due Process Clause.  The Supreme Court has held that prisoners have a liberty interest under the Due Process in not being restrained in a manner that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  The Sixth Circuit has held that a 21-month confinement in the SHU was not such an "atypical and significant hardship."  Merchant v. Hawk-Sawyer, 37

---

[2] Opinions interpreting the Fourteenth Amendment Due Process Clause provide important guidance for interpreting the due process requirements of the Fifth Amendment because the two amendments' due process clauses are substantially similar.  Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 944 (11th Cir. 1997).

Fed. Appx. 143, 146 (2002). Accordingly, the amount of time that Jebril spent in the SHU is not sufficient to raise concerns under the Due Process Clause.

The duration of the SHU confinement, however, must be considered along with the conditions of confinement in order to determine whether the confinement is an atypical and significant hardship. See Sandin, 515 U.S. at 484; Harden-Bey v. Rutter, 524 F.3d 789, 793 (6th Cir. 2008). Jebril claims that while he was in the SHU, (1) he was verbally harassed; (2) some of his property went "missing;" (3) his mail was confiscated; and (4) he was deprived of meals. None of these conditions of his confinement, however, involve the deprivation of Jebril's liberty. Instead, these actions touch on other constitutional protections, such as Jebril's interest in property under the Due Process Clause, his First Amendment rights, and his Eighth Amendment rights. Accordingly, construing Jebril's *pro se* complaint liberally, the Court finds that the complaint makes claims under these constitutional provisions, and it will address these claims under the standards appropriate to the right at issue. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Because these actions do not implicate Jebril's liberty interest, however, they are not relevant to determining whether his confinement in the SHU constituted a unconstitutional deprivation of his liberty without due process. As Jebril's complaint has no other allegations indicating that the conditions of his time in the SHU constituted an "atypical and significant hardship," he has failed to adequately allege that his liberty interest was violated by his placement in the SHU. Accordingly, he has not alleged a violation of his right to due process based on his time in the SHU.

Although Jebril's allegation that he was not given access to his property and that some of his property went "missing" while he was in the SHU does not implicate his

interest in not being deprived of his liberty without due process, it does implicate his interest in not being deprived of his property without due process.  See U.S. CONST. amend. V.  Nevertheless, this claim fails because Jebril has not alleged that the state's post-deprivation remedies are inadequate to remedy his loss and, in fact, he has filed a tort suit relating to this missing property.  See Brooks v. Dutton, 751 F.2d 197, 198-99 (6th Cir. 1985); see also Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995).

Jebril claims that his due process rights also were violated by his transfer from FCI Milan to FCI Three Rivers.  Jebril claims that this transfer violated his rights because FCI Three Rivers is both a significant distance from Jebril's home state of Michigan and a higher security prison than FCI Milan.  The U.S. Supreme Court has held, however, that it does not offend any liberty interest protected by the Fourteenth Amendment's Due Process Clause for prisoners to be transferred to a prison that is a great distance away from the prisoner's home state.  Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).  In addition, the Supreme Court has held that the Fourteenth Amendment's Due Process Clause is not violated by a prisoner's transfer to a higher security prison.  Wilkinson, 545 U.S. at 221-22 (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)).  As opinions interpreting the Fourteenth Amendment's Due Process Clause provide important guidance to the interpretation of the Fifth Amendment, the Court finds that Jebril's transfer to FCI Three Rivers did not deprive him of his liberty in violation of his right to due process.  See Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 944 (11th Cir. 1997).

   *2.    First Amendment Claim*

Jebril asserts that his legal mail was confiscated while he was in the SHU. Although a prisoner loses many rights and privileges upon his imprisonment, he "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Furthermore, the right to send and receive mail is such a First Amendment right, and legal mail, in particular, is subject to heightened protection. Jones v. Caruso, 569 F.3d 258, 267 (6th Cir. 2009). Accordingly, the Court finds that the confiscation of Jebril's legal mail would constitute a violation of his First Amendment rights.

### 3. Eighth Amendment Claims

*Pro se* complaints are to be liberally construed. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Liberally construing Jebril's *pro se* complaint, the Court finds that he has alleged that his right to be free of cruel and unusual punishment was violated. In particular, depriving Jebril of meals constitutes cruel and unusual punishment in violation of the Eighth Amendment. See Cunningham v. Jones, 567 F.2d 653, 660 (6th Cir. 1977).

Jebril also claims that he was verbally harassed and called a terrorist. Although such verbal harassment is deplorable, it does not constitute cruel and unusual punishment. See Johnson v. Dallatifa, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits."). Accordingly, Jebril has stated an Eighth Amendment claim regarding the deprivation of some of his meals, but he has not stated such a claim

relating to the verbal harassment he suffered. In addition, Jebril's transfer to a higher security prison does not constitute cruel and unusual punishment. See Garrido v. Coughlin, 716 F.Supp. 98, 103 (S.D.N.Y. 1989).

### 3. Retaliation Claim

Liberally construing Jebril's *pro se* complaint, the Court finds that it alleges that Jebril was retaliated against when he was placed in the SHU and when he was transferred to FCI Three Rivers.[3]  See Estelle, 429 U.S. at 106.

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999).

A prison inmate has the right to practice his religion so long as the exercise of that right is "not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 832 (1974). According to Jebril's allegations, Curtis was outraged because Jebril wanted to have interfaith meetings, which Curtis believed to be against Islam, and Curtis told Jebril that he needed to declare himself to be a non-Sunni Muslim. The next day, Jebril was

---

[3] Jebril also claims that his complaint alleged discrimination claims, but the Court finds that he has alleged retaliation and not discrimination because the allegedly discriminatory conduct did not occur until after Jebril began opposing Defendant Curtis.

placed in the SHU where he was, among other things, deprived of some of his meals, verbally harassed, and had some of his mail and property confiscated. These allegations indicate that Jebril was subjected to these actions because of his religious beliefs. See Smith v. Yarrow, 78 Fed. Appx. 529, 542 (6th Cir. 2003) (citing Clark County School District v. Breeden, 532 U.S. 268, 273 (2001) for the proposition that temporal proximity alone may establish causation). Accordingly, he has alleged that his exercise of his right to practice his religion caused these actions. Therefore, if these actions qualify as an "adverse action," Jebril will have adequately alleged a claim of retaliation. See Thaddeus-X, 175 F.3d at 394.

An adverse action is an act that "would deter a person of ordinary firmness from the exercise of the right at stake." Id. at 396 (quotation omitted). "[T]his threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed . . . ." Id. at 398. The Court finds that Jebril's allegations that he was placed in the SHU, subjected to verbal harassment, deprived of some meals, and had his mail and property confiscated, when considered together, satisfy this standard. See id. at 396. As such, Jebril has adequately alleged a claim of retaliation relating to these actions.

Jebril also appears to assert that he was transferred to FCI Three Rivers, a higher security facility, in retaliation for his opposition to Curtis. This claim fails, however, because Jebril was transferred eight months after he was placed in the SHU (allegedly in retaliation for his opposition to Curtis), and he did not allege that he engaged in any protected activity during his eight months in the SHU that led to his transfer. Accordingly, his allegations fail to show that his prison transfer was caused by

his engagement in any protected activity. See Martin v. General Elec. Co., 187 Fed. Appx. 553, 561 (6th Cir. 2006) (addressing a retaliatory failure to promote claim and indicating that a temporal proximity of six months, by itself, generally will be insufficient to establish a causal connection between the protected activity and the adverse action). Therefore, Jebril's claim of retaliation based on his transfer to FCI Three Rivers is dismissed.

### 3. *Defenses*

As the Magistrate Judge observed, Defendants correctly assert that any claims seeking money damages from them in their official capacities should be dismissed because such claims are barred by sovereign immunity, which has not been waived. See Blakely v. United States, 276 F.3d 853, 870. Accordingly, any such claims are dismissed.

Defendants also contend that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S.Ct. 808, 815 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This calls for two steps of analysis. Courts must determine both (1) whether the facts that the plaintiff alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendants' misconduct. Id. at 815-16. As already discussed, Jebril has alleged facts that make out

violations of his constitutional rights. Therefore, the Court must determine whether the rights were clearly established at the time of Defendants' alleged misconduct. See id.

A right is clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "Although it need not be the case that the very action in question has previously been held unlawful, in the light of pre-existing law the unlawfulness must be apparent." Russo v. City of Cincinnati, 953 F.2d 1036, 1042 (6th Cir. 1992) (quotation and alteration omitted). Accordingly, "officials can be on notice that their conduct violates established law even in novel factual situations." Hope v. Pelzer, 536 U.S. 730, 731 (2002).

The Court finds that Jebril's rights not to have his legal mail confiscated and not to be deprived of some of his meals under the First and Eighth Amendments, respectively, are clearly established. Likewise, the Court also finds that Jebril's right to be free of retaliation in the form of being confined to the SHU, deprived of meals, verbally harassed, and having his mail and property confiscated is clearly established. Accordingly, Defendants are not entitled to qualified immunity regarding these claims.

Defendants also claim that Jebril has failed to allege that each Defendant personally participated in the unconstitutional conduct. In order to prevail on his § 1983 claim against each Defendant, Jebril must show that each Defendant either was personally involved in the conduct that violated Jebril's constitutional rights or otherwise encouraged or condoned others in doing so. See Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995). Jebril alleges that Curtis initiated the retaliation against him by having him placed in the SHU. As such, Jebril has alleged sufficient personal

involvement by Curtis. Jebril also alleges that both Webber and Bradly were involved in overseeing his detention in the SHU. Therefore, Jebril also has adequately alleged their personal involvement in the deprivation of his constitutional rights. Jebril has not alleged, however, that Warden Eichenlaub had any such personal involvement in his SHU detention or the conditions of his detention. Thus, Jebril's claims against Eichenlaub are dismissed.

### V.   CONCLUSION

The Magistrate Judge's R&R is **ACCEPTED IN PART AND REJECTED IN PART**, and Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. The following claims survive: (1) the violation of Plaintiff's First Amendment rights due to the confiscation of his legal mail; (2) the violation of his Eighth Amendment rights due to the deprivation of some of his meals; (3) the violation of his right to practice his religion free of retaliation in the form of SHU confinement where he was deprived of meals, verbally harassment, and had his mail and property confiscated. Plaintiff's claims against Eichenlaub and any claims seeking money damages from Defendants in their official capacities are dismissed.

**IT IS SO ORDERED.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

DATED: **August 7, 2009**

## CERTIFICATE OF SERVICE

 Copies of this Order were served upon Plaintiff and counsel of record on this date by ordinary mail and/or electronic filing.

        s/Bernadette M. Thebolt
        DEPUTY CLERK